IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL WRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 14 C 5387 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

In January 2012, a federal jury found Michael Wright ("Wright") guilty of possessing over 500 grams of cocaine with intent to distribute and selling cocaine to a confidential informant. I sentenced Wright to 150 months in prison and the Seventh Circuit affirmed his conviction. *See U.S. v. Wright*, 722 F.3d 1064 (7th Cir. 2013).

Before me is Wright's motion under 28 U.S.C. § 2255 to vacate his sentence on the ground that he was denied the effective assistance of counsel. I deny Wright's motion for the reasons stated below.

I.

On February, 26, 2010, Wright spoke with a confidential informant ("CI") who recorded their conversation. The CI said he had a customer who wanted to buy cocaine. Wright responded that he was "stocked up" and boasted that he always tried to

1

stay two or three weeks ahead of expected demand.  The CI indicated that he would call Wright in a few days.

On March 3, with several law enforcement officers surveilling the area, the CI went to Wright's apartment building with $4,650 in marked currency and returned with 192 grams of cocaine.  Based on that controlled buy, the government obtained a warrant to search Wright's apartment, where they seized 455 grams of cocaine; smaller bags of cocaine packaged for distribution; various materials used to prepare cocaine for sale; and $4,600 in marked bills that the CI had given Wright during the controlled buy.  When Wright was arrested with the remaining $50 marked bill on his person, he said, "Look, you got me; let's just start the sentence right now."  Wright was eventually charged with possessing 500 grams or more of cocaine with intent to distribute (Count I) and distributing cocaine (Count II).  *See U.S. v. Wright*, No. 10 CR 1075 (N.D. Ill.).

Wright's attorney, Joshua B. Adams ("Adams"), filed a motion to suppress arguing that the search warrant application deliberately or recklessly omitted two facts that would have precluded a probable cause finding: (1) law enforcement did not search the CI's car for contraband before sending him to buy cocaine from Wright and (2) the CI did not wear a wire during the controlled buy.  *Id*. at Dkt. No. 26 (requesting evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978)).  The

Government countered that adding those two facts to the warrant application would not have defeated a probable cause finding. *Id.* at Dkt. No. 31. I agreed with the Government and denied Wright's motion to suppress. *Id.* at Dkt. Nos. 32, 99.

The Government later disclosed that it did not intend to call the CI as a witness at trial. At the same time, the Government moved in limine to (1) admit portions of the recorded conversation between Wright and the CI on February 26 in which they discussed the drug buy that occurred five days later and (2) bar Wright from making a missing witness argument. Wright's attorney opposed both motions. He argued that admitting the recorded conversation would violate the Confrontation Clause and Rule 404(b)'s bar against propensity evidence. He also maintained that a missing witness instruction was appropriate because the CI was peculiarly within the Government's control and had relevant testimony regarding the controlled buy.

I granted the Government's motion to admit portions of the February 26 recorded call between Wright and the CI for the following reasons:

> Testimony by the cooperating witness is not essential. The statements of the cooperating witness on the transcript submitted by the government at the pretrial conference, which defendant acknowledges are non-testimonial, do not violate defendant's right of confrontation, nor are they hearsay since they are not offered for the truth of the matters asserted. I agree with the government's contention that the evidence is directly related to the crime charged, and

3

> that, alternatively, it is admissible as 404(b) evidence of intent and absence of mistake.

*Id*. at Dkt. No. 60. I also granted the Government's motion to bar Wright from making missing witness arguments on the condition that, if requested, the CI must be made available as a defense witness. *Id*.

At trial, the defense argued that reasonable doubt existed about Wright's guilt. On Count I, Wright's lawyers tried to distance their client from the cocaine found in his apartment by suggesting that the CI was stashing his drugs there. They also drew attention to the fact that Wright had only $500 in his apartment before the controlled buy. According to Wright's lawyers, a cocaine dealer would have had far more cash on hand.

On Count II, Wright's lawyers emphasized that the Government did not record the controlled buy on March 3 or search the CI's car for drugs before sending him to Wright's apartment. They also elicited from a Chicago police sergeant that the CI had been arrested for a narcotics offense involving cocaine. Tr. at 325. The upshot, according to Wright's lawyers, was that the CI gave law enforcement cocaine that was hidden in his car and framed Wright for cocaine distribution by giving him marked currency.

After deliberating for only one hour, the jury found Wright guilty on both counts. In his motion for a new trial, Wright's

4

attorneys argued that admitting the recorded conversation from February 26 violated the Confrontation Clause because the CI's statements were testimonial. They also argued that Wright should have been allowed to cross examine the Government's witnesses about the CI's criminal history. I denied Wright's motion by minute order.

The most contested issue at sentencing was whether Wright should receive a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." Wright's attorney argued that the enhancement was inappropriate because Wright used his apartment primarily as his living quarters, not as a place from which to sell cocaine. I overruled Wright's objection. The CI told law enforcement that he had been purchasing drugs from Wright for several years, which was corroborated by the cocaine distribution supplies found in Wright's apartment.

Wright qualified as a career offender under U.S.S.G. § 4B1.1 based on three cocaine offenses from 1997, so his advisory guidelines range was 360 months to life in prison.[1] He also faced a statutory minimum of 120 months' imprisonment under 21 U.S.C. § 841(b)(1)(B)(ii)(II). Ultimately, I sentenced Wright

---

[1] Absent Wright's career offender classification, his guidelines range would have been 110 to 137 months.

to 150 months in prison and imposed an eight-year term of supervised release.

On appeal, Wright's attorneys argued that admitting the CI's statements from his recorded call with Wright on February 26 violated the Confrontation Clause. They also argued that I should have given a missing witness instruction. The Seventh Circuit rejected both arguments. The recorded call did not implicate the Confrontation Clause because the CI's statements were not testimonial; they simply provided context for Wright's own admissions. *Wright*, 722 F.3d at 1067. The court also held that Wright was not entitled to a missing witness instruction because he did not show that the CI's testimony would have been helpful to his defense. *Id*. at 1069.

Wright's conviction became final when the time for him to petition the Supreme Court for a writ of certiorari expired. *See Clay v. U.S.*, 537 U.S. 522 (2003).

II.

Wright has moved under 28 U.S.C. § 2255 to vacate his sentence on the ground that it was imposed in violation of his Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). A motion under § 2255 is the prudent way for a federal defendant to raise an ineffective assistance of counsel claim. *See Massaro v.*

*U.S.*, 538 U.S. 500, 504 (2003); *see also Ramirez v. U.S.*, 799 F.3d 845, 853 (7th Cir. 2015) (collecting cases).

"Counsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are 'so serious' that he no longer functions as 'counsel,' and prejudicial, meaning his errors deprive the defendant of a fair trial." *Maryland v. Kulbicki*, 136 S. Ct. 2, 3 (2015) (per curiam) (quoting *Stickland*, 466 U.S. at 687). The performance and prejudice inquires can be addressed in either order. *Strickland*, 466 U.S. at 697.

I start with the performance inquiry, which requires Wright to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation omitted). Wright's ultimate burden is to show that his "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

Wright's motion includes a laundry list of ways in which his two attorneys were allegedly ineffective in litigating suppression issues, during plea negotiations, at trial and

7

sentencing, and on direct appeal. *See* Dkt. No. 1 ("Mot.") at 20.

A.

Wright's first claim is that his attorneys "failed to move to suppress unfounded and illegally acquired evidence." *Id*. That argument is frivolous because Wright's attorneys did, in fact, file a motion to suppress the evidence seized from his apartment. Wright makes a series of related arguments that are also baseless. He claims that his attorneys did not "conduct a proper investigation into the sting operation," "challenge the validity of the controlled buy with no truck search," "challenge the illegality of the search upon officers seizing [his] keys," "address the timeline of the search warrant after officers entered [his apartment]," or "suppress evidence when there existed no surveillance or video." *Id*. Far from ignoring those arguments, Wright's attorneys highlighted two alleged flaws in the underlying investigation in the motion to suppress: law enforcement's alleged failure to search the CI's car before the controlled buy and the failure to record the transaction. Wright has not identified any other arguments for suppression that a reasonably prudent attorney would have made.

B.

Wright's next claim is that his attorneys failed to "advise [him] on plea options and simply moved to a jury trial" without

giving him a "realistic assessment" of his likely outcomes at trial and sentencing. Mot. at 20.[2] Advising a defendant to reject a plea offer may constitute ineffective assistance in some circumstances. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). In order to obtain a hearing on his counsel's effectiveness during plea negotiations, Wright must make "*some* threshold showing of the evidentiary basis, beyond mere conclusory allegations, that supports a finding that the government in fact offered a plea deal." *Martin v. U.S.*, 789 F.3d 703, 707 (7th Cir. 2015) (citing *Gallo-Vasquez v. U.S.*, 402 F.3d 793, 798 (7th Cir. 2005)). "This preliminary burden is not meant to be onerous" and "may be satisfied in a number of ways." *Id*. For example, Wright could present: "a copy of the proposed [plea] agreement, correspondence concerning the plea, an affidavit from counsel, a statement as to when or by whom the offer was made, a detailed account of the material terms of the plea agreement, [or] an entry on the docket setting a date for change of plea." *Id*.

Wright has not presented any evidence regarding the plea agreement that his attorneys allegedly advised him to reject. *Id.* (affirming denial of evidentiary hearing where defendant

---

[2] Confusingly, Wright also says that his attorneys persuaded him to plead guilty by guaranteeing him a particular outcome at sentencing. Mot. at 39-40. That argument has no basis in fact because Wright did not enter a guilty plea in this case.

made only "vague and conclusory allegations" regarding plea agreement that he rejected based on advice of counsel). To make matters even more confusing, Wright makes inconsistent statements about the advice he received from his attorneys regarding whether to plead guilty. Initially, Wright accuses his attorneys of steering him towards trial "based upon a set of unrealistic expectations of a sentencing outcome to fall below 120 months." Mot. at 36. In the next breath, Wright says his attorneys promised to cross-examine the CI at trial and secure a finding of actual innocence. Wright is not entitled to a hearing to resolve the conflict in his own mind about which false promise his attorneys allegedly made in advising him not to plead guilty.

In short, Wright's claim that he was denied the effective assistance of counsel during plea negotiations is too vague and conclusory to warrant a hearing. *Cf. Estremera v. U.S.*, 724 F.3d 773, 778-79 (7th Cir. 2013) (remanding for evidentiary hearing where defendant submitted rejected plea agreement and detailed affidavit stating that counsel failed to review the plea offer with him and made a false statement about one of its key terms).

C.

Wright's next claim is based on his counsel's performance at trial. The most common flaw in Wright's arguments is that

10

they ignore the trial record. For instance, Wright says his attorneys should have argued to the jury that the CI's car was not searched before the controlled buy, that the transaction was not recorded, and that the CI was a drug user who could not be trusted. Mot. at 20. The jury heard all of those arguments from Wright's own attorneys, which undermines his related argument that they lacked an overarching strategy. If anything, the record suggests that Wright and his attorneys were in agreement about the best way to sow the seeds of reasonable doubt in the jury's mind.

Wright also faults his attorneys for failing to ensure that the CI was present at trial so his credibility could be attacked. Wright's attorneys did everything in their power to make the Government's case turn on the CI's credibility. They argued that the Confrontation Clause prohibited the Government from introducing any of the CI's statements without calling him as a witness; they asked for a missing witness instruction that would have allowed the jury to presume that the CI's testimony would have been harmful to the Government; they objected on hearsay grounds when a Government witness testified about one of the CI's out of court statements concerning Wright, Tr. 131; and they elicited from a different Government witness that the CI had been arrested for a cocaine offense before he started cooperating with law enforcement, *id*. at 325. Wright's

attorneys can hardly be faulted for missing opportunities to attack the CI's credibility even though he was a non-testifying witness.  To the extent Wright thinks his attorneys were ineffective for not calling the CI as a defense witness, that argument fails for the same reason that a missing witness instruction was not appropriate: Wright "fails to make any non-speculative showing that the CI's testimony would have actually been helpful to him."  *Wright*, 722 F.3d at 1069.

Wright's remaining arguments are that his attorneys failed to "vet a jury of peers through the voir dire process," "challenge the jury instructions to find guilt on transaction only," or "bring forward expert testimony to challenge drug quantities."  Mot. at 20.  Those arguments are conclusory and do not require further discussion.  *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir.2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

In sum, Wright has not established that any of his attorneys' decisions at trial were objectively unreasonable.

### D.

In a recurring theme, Wright's complaints about his counsel's performance at sentencing are at odds with the record.  Wright's chief complaint is that his attorneys did not "challenge any enhance that would exceed the 120 month minimum."

Mot. at 20. To the contrary, Wright's attorney argued at sentencing that the two-level enhancement in U.S.S.G. § 2D1.1(b)(12) for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance" was inappropriate. Wright's attorney also urged me to deviate from the career offender guidelines, U.S.S.G. § 4B1.1, because his client's prior drug convictions were from 1997, thirteen years before the conduct at issue in this case. *See U.S. v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) (en banc) (sentencing judges may reject career offender guidelines based on policy disagreement). To say that Wright's attorney did not oppose any sentencing enhancements is to ignore the record.

Wright also complains that his attorneys did not "challenge the guideline range that was based on the elements," "move the court from the elements toward a sentence [based] on evidence," or challenge the validity of the drug quantities against evidence." Mot. at 20. The driving factors in Wright's guidelines calculation were the jury's drug quantity findings and Wright's prior drug convictions from 1997.[3] Wright's attorney could not change either of those factors, so he sensibly focused on opposing the § 2D1.1(b)(12) enhancement and

---

[3] Wright's reliance on *Alleyne v. U.S.*, 133 S. Ct. 2151 (2013), is misplaced because the 120 year mandatory minimum he faced was based on (a) a drug quantity finding made by a jury and (b) prior drug convictions that did not need to be proven to a jury.

emphasizing that his client's drug convictions were more than ten years old. Wright has not explained what else his attorney could have done to lower his advisory guidelines range.

Wright also faults his attorney for not "challeng[ing] the conditions set forth under the Pre-Sentence Report." Mot. at 20. This argument is a non-starter because Wright has not even specified which conditions of supervised release he finds objectionable.

E.

Wright's final series of complaints is about his counsel's performance on direct appeal. According to Wright, his attorneys did not "preserve certain objectionable issues ripe for appeal," "introduce Circuit-specific precedence in Certiorari against case," or "bring forward an appeal under the auspices of 'Actual Innocence.'" Mot. at 20. Those arguments are too conclusory and under-developed to warrant further discussion.

III.

Wright's motion to vacate his sentence is DENIED for the reasons stated above. I decline to issue a certificate of appealability because Wright has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

ENTER ORDER:


                                _____
                                **Elaine E. Bucklo**
                                United States District Judge


Dated: January 28, 2016